UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> MARK SAWAF, </br></br> Defendant. | No. 6:16-MJ-6041-HAI </br></br> FINDINGS AND STATEMENT OF REASONS FOR DETENTION AS TO MARK SAWAF |

\*\*\* \*\*\* \*\*\* \*\*\*

Two seemingly abandoned trail cameras were found on a four-wheeling trail in Harlan County, Kentucky and then offered for sale. A potential buyer agreed to purchase them, but only if he confirmed they operated correctly. When the would-be purchaser inserted batteries into one of the cameras, he immediately heard a "sizzle" and the camera exploded, blowing off two of his fingers and causing other injuries. The second camera was later found to contain a "victim-activated" explosive device. Through witness interviews, law enforcement came to suspect Defendant, Mark Sawaf, made the devices. Searches of his trash and residence yielded many items similar or identical to the materials used in making the devices, along with significant amounts of explosive material. Sawaf was formally charged and arrested. Can conditions of release be fashioned that will reasonably assure the safety of any person and the community? No, meaning Sawaf is required to be detained.

## PROCEDURAL STATUS AND EVDIENCE PRESENTED

By way of a criminal complaint, Sawaf faces charges of possession of a destructive device not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d) and making a destructive device in violation of 26 U.S.C. § 5861(f). D.E. 1. Sawaf concedes probable cause supports the charges. D.E. 8. Before the Court at this time is the question of whether Sawaf should be released or detained pending trial. The Court has conducted a detailed review of the record in this matter, including the complaint and supporting affidavit, the Pretrial Services Report ("PSR"), and the evidence and arguments of counsel presented at the detention hearing. Based upon that thorough review, the Court finds that application of the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141-3150, requires detention because the Court cannot fashion conditions that will reasonably assure safety.

Prior to the detention hearing conducted on June 29, 2016, the PSR was prepared and circulated indicating the USPO's recommendation of detention to mitigate danger risks. At the hearing, the Court afforded Sawaf and the United States all procedural rights provided by the BRA.

The United States seeks detention based only upon danger risks, and called DEA Special Agent Todd E. Tremaine to describe the investigation and evidence against Sawaf.[1] Tremaine relayed that:

- His 15 years with the DEA includes certification as an explosives specialist.

- Sawaf was investigated in the past for using exploding targets, which involve a binary explosive mixture that detonates when hit with a shot from a high-caliber rifle. It was determined that Sawaf was possessing and using the explosive materials properly.

---

[1] The Court has reviewed all the evidence presented in detail, including the exhibits entered into evidence, but only provides a summary herein of the evidence presented by both sides.

- In June 2016, a former ATF agent and current investigator for Duracell contacted the ATF about an incident on May 5, 2016, during which a trail camera or "cam" exploded.

- An ATF bomb technician and two other bomb technicians interviewed individuals involved. The victim, Dustin Hall, obtained the exploded trail cam from Aaron Noe, who found it and a similar cam on private land in the "Red Dog" area of Harlan County. Hall agreed to purchase the cams from Noe if they worked.

- Hall, at his residence, hooked up a battery or batteries to one of the cams, heard a sizzle sound, saw smoke and a white flash as the cam exploded, and, as a result, was missing fingers and bleeding heavily.

- An examination of the other cam (the "second cam") found by Noe revealed a spent 9 mm shell casing filled with a mixture that field-tested positive as explosive, with an inserted hobby fuse and sealed by hot glue. The device was intended to heat and light the fuse with electric current once a power source was inserted in the cam, resulting in an explosion consistent with that described by Hall. This is a "victim-activated device," or bomb, designed to explode and harm someone. The device also included a copper wire with orange insulation.

- Interviewees who knew Sawaf and identified him based upon his driver's license described him as having been on the property where the cams were found. Other cams had been found on the property, some of which had the initials "M.S." written on them and two of which had images of Sawaf contained on their memory card.

- Two of Sawaf's neighbors were interviewed and stated they heard a large explosion in either December 2015 or January 2016 at his residence and saw a large amount of smoke coming from the residence.

- On June 14, 2016, Sawaf tried to contact Hall.

- On June 16, 2016, a search of trash left at what was confirmed to be Sawaf's residence in Harlan County was conducted. Orange wire similar or identical to that found in the second cam was found, along with a magazine addressed to Sawaf, a separate piece of orange insulation apparently cut from a wire, a screw similar to that seen in the second cam, a trail cam warranty registration card with hot glue on it, a user's manual for a trail cam of the same model as the second cam with hot glue on it, shotgun shells and a rifle round that had been tampered with indicative of thermal damage (which Tremaine opined was consistent with research, development, and experimentation concerning improvised explosive devices), and a handwritten note stating "Broken camera for a broken soul."

- Sawaf was interviewed, admitted to being the sole resident of his house, to making tannerite and black powder, to purchasing an explosive precursor, to having put powder in prescription bottles or shells to ignite them, to burning/exploding powder, and viewing how to mix powders online, but denied making any improvised explosive devices, searching online for how to make explosives, making a hot glue seal on containers with powder, or inserting a wick/fuse in any shell casing. He further admitted he wrote the note that was found and said he intended to leave it in a cam for someone to steal as a prank. He also admitted to attempting to contact Hall.

- On June 21, 2016, Sawaf's residence was searched pursuant to a warrant. Found were a shotgun shell with suspected explosive material sealed with hot glue and containing a hobby fuse preliminarily assessed as an explosive device, a green hobby fuse, a piece of orange insulation consistent with that in the second cam, various trail cam parts on a workbench, hot glue, several suspected explosive powder mixtures, a rock tumbler commonly used in mixing powder, cut orange wire identical or very similar to that in the second cam, various trail cams, and two five-pound bags of ammonium nitrate and iron oxide.

- Small quantities of marijuana and methamphetamine were also found in the residence.

- Tremaine opined that a quantity of suspected powder found in Sawaf's residence could destroy a car and everyone in it, and that the quantity of ammonium nitrate found could destroy a house.

- Two other certified explosives experts have examined the second trail cam and the filled shotgun shell found at the residence and have preliminarily assessed them to be destructive devices as defined by 26 U.S.C. § 5845(f).

- The ATF has received other reports of exploding trail cams, one of which was found in the "Red Dog Road" area of Harlan County and exploded when a power source was provided resulting in injuries and necessitating medical treatment. Another report of an exploding trail cam has not been confirmed.

- A competitor of Sawaf's counseling service has reported various forms of harassment by him, including harassing communications and disturbing videos, which have created fear of Sawaf.

- In his opinion, the investigation reveals a natural progression of an interest in explosives from simple methods and techniques at the beginning to more complicated and sophisticated techniques.

- On cross, Tremaine acknowledged Sawaf was not a high priority investigative target following the determination the explosive targets were lawfully possessed,

4

that the property where the trail cams were found is accessible to anyone, that there are certain differences between the destructive device in the second cam and the materials found in Sawaf's trash and residence, that booby traps can be used to protect marijuana grow operations but no such operation was found, and that the individual materials found are not *per se* illegal.

The defense presented two witnesses, Sawaf's brother, John Sawaf, and girlfriend, Nancy Penn. John Sawaf is a physician who resides in Tennessee, and sees Sawaf only occasionally. He believes Sawaf is healthy and has no mental health problems, and has never seen him drink to excess or use drugs. He was last in Sawaf's residence in August 2015 when their mother passed away, and did not see any indication of substance abuse or explosive device manufacturing. He believes Sawaf's patients need his counseling services and that, instead of posing a threat to the community, he is an asset to the community.

Penn has dated Sawaf for 9 years, and described him as an amazing companion. He splits his time between the residence searched and her home (owned by Sawaf) in Lexington, and she has only been to the Harlan residence a handful of times. She has never seen Sawaf drunk or high on marijuana, though acknowledged on cross he used marijuana while they were vacationing together in Mexico. She does not believe he has any mental problems, he has not acted erratically, and she believes he is a great help to his patients and is not a danger to the community. The defense also offered Penn as a potential third-party custodian. She was questioned thoroughly and agreed to assume all the responsibilities of that custodial status and believes she could be with him 24 hours each day. She did, however, acknowledge being treated for various mental health conditions including bipolar disorder, panic disorder, anxiety disorder, and ADHD. She described her mental health issues as a lifelong struggle requiring continuing treatment.

## ANALYSIS AND FINDINGS

In the absence of either of the § 3142(e) presumptions, the BRA's default is release. Indeed, the BRA requires that the Court apply the least restrictive alternatives to detention, and renders custody a last resort to reasonably assure appearance and the safety of the community. *See* 18 U.S.C. § 3142(a)(1)-(4). The analysis begins with release on personal recognizance, and any condition imposed must be tailored to reasonably assure against non-appearance and danger. *See id.* At all times, the evaluating court must impose the "least restrictive" alternative. *See id.* at (c). The BRA expressly disclaims any modification of, or limitation upon, the presumption of innocence. *See* 18 U.S.C. § 3142(j).

Sawaf may be detained only if the Court finds that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1). Detention based on danger must rest on facts supported by clear and convincing evidence. *See* 18 U.S.C. § 3142(f)(2)(B).

Based upon the analysis below of all of the § 3142(g) factors, the Court finds that no conditions exist that can reasonably assure safety. Sawaf's proposed release scenario, including Penn as his third-party custodian and residence in Lexington at a home he owns with a restriction on traveling to Harlan, is not sufficient to mitigate the readily apparent danger risks. Penn is a sincere and well-meaning companion to Sawaf, but also a very poor custodial candidate given her mental health history. And the portrait the evidence paints of Sawaf is of a dangerously duplicitous individual – loving and caring to those who know him, but a secretive and anonymous explosives manufacturer whose devices are left for any hapless member of the public to find and trigger with serious resulting injuries. The government's case, on this record and

without comment or modification of the presumption of innocence,[2] is strong and indicates danger risks of a grave and random nature beyond the ability of conditions to sufficiently mitigate.

**Section 3142(g)(3) - History and characteristics of Defendant.**

The defense presented several pro-release characteristics as described by the PSR. Sawaf has never been convicted of a crime. He is industrious, having been self-employed as the owner and operator of Harlan Counseling, Inc., since 2014, with steady employment for more than a decade in that field prior opening that business.[3] His finances are consistent with that history of employment. He is well-educated, with a master's degree in mental health counseling. He describes a diagnosis of ADHD, but receives regular treatment. The PSR, through a KASPER check, indicates a Zoloft prescription in 2009, but Sawaf denies ever having been diagnosed with depression. His long-term relationship with Penn reflects stability as well, and she clearly would be a supportive influence. Sawaf admits to social alcohol use, but denies any substance abuse history. He did not answer any specific questions about drug use.

Although found in small quantities, the marijuana and methamphetamine at Sawaf's residence clearly signify danger risks in the form of drug possession and use. Other than that concern, the PSR and testimony of the defense witnesses portray Sawaf as a highly educated, hard-working business owner responsible for the well-being of others, with stable finances and personal relationships, and lacking any prior criminal convictions of any kind. As discussed below, however, the evidence presented by the government paints a dramatically different portrait.

---

[2] *See* 18 U.S.C. § 3142(j).
[3] The PSR does not specifically describe the nature of Sawaf's employment, if any, from 2012 to 2014.

**Section 3142(g)(1) - Nature and circumstances of offense charged, (2) Weight of the evidence against Defendant[4] and (4) Nature and seriousness of danger posed by release.**

The evidence concerning the remaining 3142(g) factors overlaps. Because of the involvement of destructive devices, 18 U.S.C. § 3142(g)(1) is expressly pro-detention. Sawaf concedes probable cause supports the two charges. The charged offenses are within the National Firearms Act, 26 U.S.C. §§ 5801 *et seq.*, the purpose of which is to "curb the proliferation of especially dangerous weaponry 'identifiable generally and broadly, if not exclusively, with criminal activities.'" *United States v. Springer*, 609 F.3d 885, 88 (6th Cir. 2010) (quoting *United States v. Black*, 431 F.2d 524, 528 (6th Cir. 1970)).

Sawaf contends the government's evidence does not sufficiently tie him to the trail cams found by Noe as it is circumstantial and contains inconsistencies. For release-detention purposes, however, the Court views the evidence as strong because it presents a detailed and thorough investigation revealing convincing evidence that ties Sawaf to having made and possessed explosive devices. In other words, although the circumstantial evidence does require inferences to tie Sawaf to the cams found by Noe, the evidence found in Sawaf's trash and residence amply support the necessary inferences. Particularly persuasive to the Court is the evidence concerning the orange-insulated wire. That wire was found to be a critical component of the ignition mechanism in the second cam, and Tremaine testified identical wire and/or insulation was found in Sawaf's trash and residence. The user manual with hot glue found in Sawaf's trash matching the model of the second cam is highly persuasive as well. There is more, of course, and all these links implicate Sawaf when cast against the backdrop of his undisputed

---

[4] The Sixth Circuit has stated, "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *See United States v. Stone,* 608 F.3d 939, 948 (6th Cir. 2010). Here, the evidence supporting the charges also goes to dangerousness given Sawaf is charged with making and possessing explosive/destructive devices.

interest in explosives. Notably, at this stage, the government's evidence is entirely unrebutted, which bolsters the necessary inferences.

In turn, that evidence portrays Sawaf as having made explosive devices designed to be triggered by unsuspecting victims intending to do nothing more than determine whether a camera is functional. The randomness of this scheme is deeply troubling to the Court and evidences an utter lack of respect for human safety and life. The nature and seriousness of the danger posed by his release are therefore grave. The defense does present a strict release scenario, including Penn as Sawaf's third-party custodian, but her mental health history eliminates her as a suitable custodian. Additionally, because the evidence from the defense so starkly contrasts with that of the government, Sawaf appears to have hidden his dangerous nature from Penn, and the Court has little doubt he could do so again. Certainly Sawaf's capability of making an explosive device is not limited to his residence in Harlan, but is as mobile as he is. Thus, limiting him to his Lexington residence is an ineffective measure.

## **CONCLUSION**

Any detention decision ultimately turns on the efficacy of potential conditions which, in turn, depends upon predicted compliance by a Sawaf. *See United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting with respect to strict conditions that "[i]n order to be effective, they depend on [defendant's] good faith compliance."). Based upon the evidence before the Court that Sawaf is dangerously duplicitous, the Court believes Sawaf cannot be sufficiently trusted to comply with even the strict conditions proposed by the defense.

Based upon the evidence presented and the section 3142(g) factors, the Court finds, by clear and convincing evidence, that no release condition or combination of such conditions will reasonably assure the safety of any other person.

For the reasons stated, the Court orders Sawaf detained in the custody of the U.S. Marshal pending trial.

**Directions Regarding Detention**

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting sentencing or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding herein.

This the 30th day of June, 2016.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge